**Carolyn L. TAYLOR and Donald J. Taylor, Plaintiffs-Appellants,**

v.

**Margaret M. TODD, Defendant-Appellee.**

**No. 1–282A32.**

Court of Appeals of Indiana, First District.

Aug. 31, 1982.

---

Kent H. Musser, Rynearson, Laudig & Musser, Indianapolis, for plaintiffs-appellants.

Richard L. Fairchild, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiffs-appellants Carolyn L. Taylor (Taylor) and Donald J. Taylor brought this action in the Boone Circuit Court for damages sustained when Taylor was struck by a car driven by the defendant-appellee, Margaret M. Todd (Todd). The jury returned a verdict for Todd, and Taylor argues that the trial court erred in instructing the jury on the sudden emergency doctrine.

We affirm.

## STATEMENT OF THE FACTS

The facts most favorable to the judgment are as follows. The collision occurred on March 10, 1978, at 5:49 a. m. in the 7000 block of East 21st Street in Indianapolis. This was shortly after the notorious blizzard of '78, and accumulations of ice and snow remained on or near the traveled portions of many city streets. On East 21st Street near the scene of the collision, two lanes were open for traffic, one eastbound and one westbound. Ice and snow were piled on the sides of the road to the outer edges of both lanes, and some snow and ice encroached into the eastbound lane where Todd was driving. At the time of the collision it was still dark. The temperature was below freezing and Todd testified that there was "a slight fog or ice crystals in the air."

Just before the accident, Taylor had been to a restaurant for a cup of coffee; she left the restaurant and walked toward her place of employment, which was one block east on 21st Street. Todd was driving east on 21st Street at 15 to 20 m. p. h. when she saw Taylor walking on the right side of the road one or two car lengths ahead of her. At trial Todd said she was surprised to see

anyone walking there in the morning darkness and the unfavorable weather conditions. In her direct testimony during the plaintiff's case, she described the ensuing collision as follows.

"I remember I felt a need to be cautious because of the on-coming traffic and the narrowness of the encroachment of the ice and snow, that I had to, you know, maintain, not deviate, because of running into them or the snow. You just had to, you know, just be careful, and it was the darkness, had my lights on. All I can remember is pretty soon I saw ahead of me someone walking on the right side of the road. That person had white pants on and what I thought to be a brown leather like coat. I distinctly saw the white pants and the back of the white coat, or the brown coat, and they were just walking along the side of the road. It seemed to me there was no problem. I wasn't going very fast, and I was passing that person. I remember beginning passing that person okay. The front of the car was past that person when I heard an awful thump on the side of my car. As soon as I heard that thump, I stopped as soon as I could. I didn't jam on the brakes because of the condition [of the road] . . . And then the police came, and the policeman asked me what had happened, and I told him I didn't know because I sure didn't know, and I still don't know . . . ."

Todd later elaborated on the moment of the collision:

"Now, when I saw her, when my headlights picked her up, she was on the side of the road. Now, I don't know what was—she was down street level. In other words she wasn't walking on top of a big pile of snow, but I don't know what was under her feet. . . . All I know is she was walking, allowing space between me and the car, and I had enough room to pass her with no problem. She was walking straight, I was driving straight, there seemed to be no problem at all, as I was passing her and I was passing—in the process of passing her, when I heard this noise."

Todd estimated that when she began to pass Taylor, Taylor was walking approximately three feet away from the car. The following exchange occurred later in the direct examination.

"Q. But you didn't see any danger in coming within 3 feet of a pedestrian, given the nature of the side of the road at that time?

A. No. She seemed to have no trouble walking at the time I was watching her, aware of her walking in front of me."

Taylor testified that due to injuries she received in the collision, she could not remember much about how it occurred. On cross examination she recalled stating in her deposition that she was stepping down with her left foot from a higher portion of ice and snow when she was struck by Todd's car. She stated that she did not see Todd's car before it struck her.

Todd and Taylor were the only witnesses to the collision and the only witnesses testifying at the trial.

## ISSUE

Whether the trial court committed reversible error in instructing the jury on the sudden emergency doctrine.

## DISCUSSION AND DECISION

The sudden emergency instruction given by the trial court is as follows:

"You are instructed that when a person is confronted with a sudden emergency, not of his own making without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if he exercises such care as an ordinarily prudent person would exercise when confronted by a like emergency, he is not liable for an injury which resulted from his conduct, even though another course of conduct would have been more judicious or safer, or might even have avoided the accident.

Therefore, if you find from a fair preponderance of the evidence in this case that the defendant was faced or confronted with a sudden emergency not of her own doing, and that thereafter she pursued a course of conduct that an ordinarily reasonable and prudent person would pursue or follow when confronted with the same emergency, then the defendant would not be liable to the plaintiffs, even though you believe that another course of action or conduct would have been more judicious, safer or might have even avoided the accident."

The trial court has a duty to give an instruction that is supported by the evidence and that correctly informs the jury about a party's theory of the case. *Baker v. Mason,* (1968) 253 Ind. 348, 242 N.E.2d 513; *Kiger v. Arco Auto Carriers, Inc.* (1969) 144 Ind.App. 239, 245 N.E.2d 677. In the case at bar, Taylor argues only that the sudden emergency instruction was not supported by the evidence. If there was any evidence or inference supporting the instruction, there was no error in giving it. *Kiger, supra.*

In order to invoke the sudden emergency doctrine a party must prove the following facts:

"(1) That the appearance of danger or peril was so imminent that he had no time for deliberation. *Hedgecock v. Orlosky* (1942), *supra,* 220 Ind. 390, 397, 44 N.E.2d 93;

(2) That the situation relied upon to excuse any failure to exercise legal care was not created by his (appellant's) own negligence. *Dunbar v. Demaree* (1936), 102 Ind.App. 585, 601, 2 N.E.2d 1003; *Redd v. Indianapolis Railways* (1951), *supra,* 121 Ind.App. 472, 97 N.E.2d 501;

(3) That his conduct under the circumstances was such as the law requires of an ordinarily prudent man under like or similar circumstances. *Gamble v. Lewis* (1949), *supra,* 227 Ind. 455, 85 N.E.2d 629; *Zoludow v. Keeshin Motor Express* (1941), 109 Ind.App. 575, 34 N.E.2d 980."

*Taylor v. Fitzpatrick,* (1956) 235 Ind. 238, 247, 132 N.E.2d 919; *Cartwright v. Harris,*

(1980) Ind.App., 400 N.E.2d 1192; *Wells v. Gibson Coal Company,* (1976) 170 Ind.App. 445, 352 N.E.2d 838. In addition, the doctrine presumes that the actor perceives his situation as an emergency. In the instant case the evidence did not support the instruction because Todd testified that she saw no danger in passing Taylor, and nothing in her testimony indicates that she perceived an emergency. Without the perception of sudden danger, there is no impairment of judgment and no need for the sudden emergency instruction.

In *Dimmick v. Follis,* (1953) 123 Ind.App. 701, 111 N.E.2d 486, this court explained the requirement that the actor perceive a perilous situation.

"[A]t no time was the appellee conscious of peril and no conduct on her part was prompted by a sudden realization of danger. The yardstick for measuring the quantum of care exercised by one confronted by sudden peril can be used only in connection with what he does or fails to do after discovering the danger to which he has been suddenly subjected. The whole doctrine of sudden peril has to do with the judgment one exercises in an emergency and if one is unaware of such emergency and exercises no judgment there is no room for the application of the doctrine."

*Id.,* at 708–709, 111 N.E.2d 486.

*Baker, supra,* is factually similar to the case at bar and illustrates this point. The defendant first saw the child plaintiff playing near the street when she was approximately one block away. She did not see the child again until after she had heard a "thud" and stopped her car. The trial court gave a sudden emergency instruction, and the jury found for the defendant. This court upheld the giving of the instruction. *Baker v. Mason,* (1968) 142 Ind.App. 314, 234 N.E.2d 665. The Supreme Court granted a rehearing of the plaintiff-appellant's petition to transfer, and held that the instruction was erroneously given, stating:

"[T]he appellee, by her own testimony, demonstrated that she was not aware of any emergency or peril until after the

impact . . . . The only indication that appellee was even aware of the appellant's presence prior to the impact was when she was one block away and that would not constitute a sudden emergency."

*Baker, supra,* 253 Ind. at 350, 242 N.E.2d 513. However, the court found the error harmless and denied transfer. *Compare, Doi v. Huber,* (1969) 144 Ind.App. 451, 247 N.E.2d 103; *Kiger, supra; Buckner v. Wilson,* (1967) 141 Ind.App. 272, 227 N.E.2d 462. In the case at bar Todd said she was surprised to see someone walking at such an early hour and in bad weather, but nothing in her testimony evinces a perception of danger or panic that rendered her unable to act or to use her best judgment. Her description of the collision indicates that she was driving slowly and believed she had enough room to pass Taylor without difficulty. It was error to instruct the jury on the sudden emergency doctrine.

We must now decide whether Taylor has demonstrated that she was prejudiced by the instruction. *Baker, supra; Evansville City Coach Lines, Inc. v. Atherton,* (1962) 133 Ind.App. 304, 179 N.E.2d 293. In deciding this issue we must presume that the jury obeys the instructions as given. *Wimp v. Anthis,* (1979) Ind.App., 396 N.E.2d 918.[1] In the case at bar the jury was instructed that *if* they found Taylor was confronted with a sudden emergency and pursued a course of conduct that an ordinarily reasonable, prudent person would follow in the same emergency, then she would not be liable.

"In other words, the jury was told that, in determining whether the appellee was negligent, they were to place the reasonable prudent person in the same situation in which they believed the appellee to have been. Except for the 'sudden emergency' language, the instruction could

stand as a proper test for determining negligence. It has already been established that there was no evidence from which the jury could have found a 'sudden emergency' to have existed prior to the impact. Thus, the jury would have to have either found this instruction to be inapplicable or placed the 'reasonable prudent person' in the situation in which they believed the appellee to have been. In the first case, the instruction would have been harmless; in the second case, the jury would have applied the proper test in ascertaining the appellee's negligence. In either case, the instruction could not have prejudiced the appellant so as to require a reversal of the trial court's judgment."

*Baker, supra,* 253 Ind. at 351-52, 242 N.E.2d 513. We believe that this analysis is applicable to the case at bar. We note that giving a sudden emergency instruction without supporting evidence has rarely been considered a reversible error. *See, e.g., Dimick, supra.* In the majority of those cases allowing reversal, the court also relied on other errors to support its decision. *See Baker, supra; Spears v. Aylor,* (1974) 162 Ind.App. 340, 319 N.E.2d 639; *Dimick, supra.*

■ Taylor has emphasized the fact that the jury requested a rereading of the instructions after an hour's deliberation and reached its decision ten minutes after the second reading. This does not demonstrate prejudice. We assume that the jury followed the instructions. However, the sudden emergency instruction merely calls for the application of the reasonable prudent person standard and was not harmful in this case. *See Spears, supra.* We also reject the argument that the sudden emergency instruction conflicted with the instruction on last clear chance, a defense to contributory negligence. In effect the jury was instructed that if Taylor had insuffi-

1. In *Wimp* no prejudicial error was found where the jury was instructed on elements of damages which allegedly were not supported by the evidence; the instruction told the jury to determine those elements of damage which were proved by the evidence to have resulted from the negligence of the defendant and listed

several elements that the jury might consider. Since the jury was not required to find any of those elements, the instruction was not prejudicial. *See also, Southern Indiana Gas and Electric Company v. Scoles,* (1982) Ind.App., 435 N.E.2d 287.

cient time to deliberate but acted reasonably in a sudden emergency, she was not negligent. But if Taylor had "the time and means to avoid the injury or damage but negligently fail[ed] to exercise ordinary care to do so" last clear chance applied and any negligence by Todd would not defeat her recovery. We see no conflict between these instructions. The principal difference between them is the amount of time the actor has to react to the situation. The jury could have found for Taylor under the last clear chance instruction if it believed that Todd had sufficient time to act reasonably but failed to do so.

For the reasons given above, we hold that Taylor was not prejudiced by the trial court's error in giving the sudden emergency instruction, and the judgment is affirmed.

Affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.